# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL A. CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV-13-926-R |
| | ) |
| JODY JONES, CHSA, et al., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff filed this action alleging violation of his constitutional rights with regard to medical care he sought and which was delayed during his incarceration at Dick Conner Correctional Facility. Pursuant to 28 U.S.C. § 636(B)(1)(b), the matter was referred to United States Magistrate Judge Charles B. Goodwin for preliminary review. On March 17, 2016, Judge Goodwin issued a Report and Recommendation wherein he recommended that the Defendants' Motion for Summary Judgment be denied. He further recommended that Plaintiff's Motion for Summary Judgment and Plaintiff's Motion for Directed Verdict be denied. (Doc. No. 70). The matter is currently before the Court on the timely objections of both Plaintiff and Defendants, which gives rise to the Court's obligation to conduct a *de novo* review of those portions of the Report and Recommendation to which a party makes specific objection. Having made such *de novo* review, the Court finds as follows.

The Report and Recommendation addresses the merits of Plaintiff's claims against Defendants, including whether they are entitled to qualified immunity, as well as whether there are genuine issues of material fact with regard to Plaintiff's exhaustion of his prison administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Judge

Goodwin concluded that Defendants failed to establish the absence of issues of material fact with regard to whether Plaintiff exhausted his "available" administrative remedies, concluding that the evidence raised the inference that the actions of officials at the DCCF rendered the remedies unavailable. The Court has reviewed the evidence and briefs of the parties and finds, however, that Defendants have established that no genuine issues of fact remain and they are entitled to summary judgment because Plaintiff failed to exhaust the remedies and Plaintiff fails to present evidence to support the conclusion that remedies were unavailable.

In *Ross v. Blake*, — U.S. —, 136 S.Ct. 1850 (2016), the Supreme Court noted the textual exception to the mandatory exhaustion provision of 28 U.S.C. § 1997e(a). That is, an inmate is only required to exhaust administrative remedies that are available to him. "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court identified three situations where remedies might be unavailable and thus exhaustion excused: (1) the "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) a system so "opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Although operating without the benefit of *Ross*, Judge Goodwin concluded that Plaintiff established that exhaustion might be excused because Defendant Jones' rejection of Plaintiff's February

2

18, 2013 grievance was not in accordance with DOC Policy OP-090124. The undersigned however, disagrees that any error by Defendant Jones was sufficient to render the prison administrative remedies "unavailable." Here, Plaintiff made no effort to seek an appeal to the final level of administrative review, where the chief medical officer could have righted the alleged inadequacies at the grievance level. Because there is no dispute that Plaintiff made no effort to engage in the final step, the Court finds Defendants are entitled to summary judgment.[1]

There is no dispute regarding the attempts Plaintiff made to exhaust his claims, which consisted of the following: On January 10, 2016, Plaintiff submitted a Request to Staff, directed to the facility Medical Services, which, for unknown reasons, was not received by them until January 23, 2015. Therein Plaintiff requested a policy change so that no person who had been prescribed medicine for high blood pressure would ever be denied medication and further requested the termination of nurse Beka for asking Plaintiff to submit a sick call request when she knew the doctor had prescribed blood pressure medication for him.[2] On January 24, 2013, Health Services returned the form with the "Other" box checked, and a

---

[1] The Oklahoma Department of Corrections' Grievance Process is a well-known process involving four steps. The first requires informal consultation with staff. It is followed by three written steps, a Request to Staff, a formal grievance and an appeal to the administrative review authority or the chief medical official, depending on the issue for which the inmate is seeking redress. *See Thomas v. Parker*, 609 F.2d 1114, 1117 (10th Cir. 2010). The issues herein were medical, and thus the Department of Corrections' chief medical official was the final step in the process.

[2] Plaintiff had been in possession of the medication to combat his high blood pressure until the back-up of raw sewage in his cell area required that he be relocated. His prescription was in his cell and he was instructed to obtain new medications when he was relocated. He contends that in January 2013 when he requested pills that he was wrongly chased from the medical unit by the nurses and told he must submit a sick call slip rather than obtaining his pills from the pill line, which was permissible under DCCF policy.

3

notation that "[r]equests for disciplinary action against staff will not be addressed." The form instructed that the request could be resubmitted. On January 14, 2014, Plaintiff submitted a Request to Staff to Tom Dyer inquiring with which medical personnel Dyer had spoken about Plaintiff's medical issues. Mr. Dyer responded by stating he had spoken with Bob Silvis.

On January 22, 2013, prior to receipt of his response to his initial Request to Staff, Plaintiff filed an Emergency Grievance with the Medical Services Administrator for the Department of Corrections. He indicated therein that he had not filed a prior grievance on the issue. He recited the events of December 2012 that resulted in the loss of his prescription and his efforts to obtain medication and the failure of two nurses to provide the same without requiring him to submit a sick call slip. He noted that as a result of the absence of his medications he suffered a stroke and was hospitalized from January 5 through January 9, 2013, and further that since his release the medical staff failed to comply with his physician's discharge orders regarding medication and blood pressure monitoring. In the section of the form reserved for Plaintiff to indicate the action he believed the reviewing authority should take he stated:

> Administer the treatment Dr. Baker prescribed for me. Help the medical staff here at DCCC to realize that their denial of my high blood pressure medication caused me to have an unnecessary stroke & potential death; and their continued denial of my medication will very well cause my death. Terminate the employment of Nurse Rebecca Maker & Nurse Nadine and the Medical Administrator of DCCC, because they are jeopardizing all the lives of the men incarcerated at DCCC.

Genese McCoy, the Medical Services Administrator returned the Emergency Grievance,

concluding it was not an emergency, that the grievance should follow standard grievance protocol. She also noted that the grievance should have been filed at the facility's reviewing authority and that employee discipline is not amenable to the grievance process. Although Plaintiff filed subsequent grievances seeking a policy change, he did not resubmit the grievance at the facility level, presumably because on January 23, 2013 he started receiving his blood pressure medication.

On January 31, 2013, Mr. Campbell submitted a Request to Staff to Defendant Jody Jones seeking a policy change to ensure no person with high blood pressure was ever denied medication. She responded on February 10, 2013, that a prescription policy existed at the facility. On February 12, 2012, Plaintiff submitted a grievance to the Warden, Terry Martin, regarding his desire for a policy change. The Warden's designee returned the grievance unanswered on February 13, 2013 because the issue was one for the Correctional Health Services Administrator ("CHSA"), Jody Jones. On February 18, 2013, without making any modifications to the Grievance form, which was addressed to the warden but now submitted to the CHSA, Plaintiff made the policy change request to Defendant Jones. On March 4, 2013, Jones, the CHSA, returned the grievance with the following response:

> On February 12, 2013 you submitted a grievance to the Warden's office that was returned to you on February 13, 2013 for failure to follow procedure.
> The grievance was resubmitted to my office on February 18, 2013, again procedure was not followed.
> Your grievance has been returned unanswered due to the following procedural errors:
> • No additional pages allowed except for the original "Request to Staff"
> • All medical grievances will be submitted to the facility CHSA.
> At this point you have met the very clear criteria of abuse of the grievance

5

process, as outlined in OP-09-124 entitled "Offender Grievance Process. . . ."

The letter also acted as a grievance warning and advised that further violations of the policy could result in grievance restrictions. A March 4, 2013 attachment to the unanswered grievance stated:

> Original grievance was returned unanswered on 2/13/13 due to procedural errors. Errors not corrected, therefore per policy 090124 VI.B.6 offender has waived/forfeited the opportunity to proceed in the grievance process.

Undeterred by the March 4, 2013 correspondence, Plaintiff resubmitted the same grievance to Defendant Jones on March 8, 2013, which resulted in return of the grievance unanswered noting the prior response and imposing grievance restrictions.[3] With regard to his various grievances there is no dispute that Plaintiff never availed himself of OP-090124(VII), which permits appeal to the chief medical officer after denial of a grievance.[4]

As noted by the Supreme Court in *Woodford v. Ngo*, 548 U.S. 81, 89 (2006), one of the goals of administrative exhaustion is to permit the Department of Corrections to correct its own mistakes prior to being named in litigation. The Court concludes that under the

---

[3] Defendant appears to concede that the rejection on the basis of to whom the grievance was addressed was in error, because it was indeed submitted to and received by the CHSA. Defendants contend, however, the rejection was two-fold, and that the second reason provided a sufficient basis to reject the issue. Although Plaintiff apparently attached pages to the grievance beyond the Request to Staff, which is impermissible under the policy, the grievance had not previously been rejected on that ground and thus could not constitute a failure to correct errors previously identified by the reviewing authority so as to invoke the provision of OP-090124(VI)(B)(6):
> The reviewing authority will return unanswered any grievance that contains any errors in the filing process and notify the offender to correct the errors within 10 calendar days of receipt of the notice to the reviewing authority. If the offender fails to correct the errors, the grievance will be returned unanswered and the offender will have waived/forfeited the opportunity to proceed in the grievance process.

[4] In response to Defendants' motion for summary judgment Plaintiff includes his tort claims to the Office of Risk Management, this however, is not part of the administrative process.

undisputed facts set forth herein, that to permit a Plaintiff who make no attempt, successful or otherwise, to avail himself of an appeal to the Administrative Review Authority "ARA" following denial of a grievance would undercut this goal by permitting inmates to proceed directly to Court if a Request to Staff or grievance is denied for reasons not permitted by the DOC policy. Furthermore, "the onus falls on the plaintiff to show that remedies were unavailable to him as a result of" the prison officials actions. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011), By failing to avail himself of the final step of the administrative process Plaintiff cannot establish that remedies were not available.[5] The Report and Recommendation relies in part on *Jones v. Miller*, 2014 WL 4267409 (W.D.Okla. 2014), wherein inmate Jones attempted an appeal to the ARA, the fourth and final step in the process, but his appeal was returned unanswered because it was untimely. The plaintiff's request for leave to appeal out of time to the Administrative review authority was denied, and as a result, the defendant argued Plaintiff had failed to properly exhaust his administrative remedies. Judge DeGuisti disagreed with the Magistrate Judge's determination that dismissal was warranted because Mr. Jones had failed to exhaust. Rather, he concluded that error at the grievance stage by DOC officials demonstrated the unavailability of administrative remedies. Although perhaps correct in the context of an inmate who has unsuccessfully attempted an appeal to the ARA but was rejected at that level due to errors at the facility level, the Court concludes the same result is not appropriate in this action. *See also Little v. Jones*, 607 F.3d

---

[5] The Court can certainly anticipate situations where it might be impossible for a plaintiff to attempt exhaustion at each level, such as when prison officials deny an inmate access to the necessary forms for pursuing grievances. *See e.g. Eller v. Lish*, 2016 WL 397581, *3 (D.Colo. 2016).

1245 (10th Cir. 2010)(noting that the plaintiff asserted his right to a vegan diet at every level of the administrative process, and that the administrative review authority exceeded its authority by rejecting an appeal on grounds not authorized by DOC policy and thus failure to exhaust was excused).

In *Little*, the court concluded that the "ARA exceeded its authority when it rejected [plaintiff's] grievance appeal, [and therefore] rendered the final step of exhaustion unavailable." *Id.* at 1250. Here, however, Plaintiff made no attempt to pursue relief from the chief medical officer. Had he done so and the appeal been rejected based on the rejection of the grievance the Court would likely alter its position herein. However, Plaintiff made no such attempt.

The Tenth Circuit's very recent opinion in *Williams v. Wilkinson*, No. 15-7075 (10th Cir. Sept. 14, 2016), provides guidance to the undersigned concerning exhaustion. Therein the court concluded that certain claims were exhausted, without reference to their availability, because facility officials erred in the basis for denying the plaintiff's grievances. The inmate however, had availed himself of the appellate process by seeking relief from the ARA, and those appeals were denied on procedural grounds related to the denial of the underlying grievance. For example, Mr. Williams filed a request to staff asserting a claim of misconduct against a nurse following an alleged use of excessive force by an employee against inmate Williams. Williams submitted the request on August 23, 2012, but it went unanswered. As a result, he filed a grievance, which was assigned No. 534, complaining about the lack of response. The grievance was returned as deficient on two grounds, the

inmate's failure to provide his Request to Staff and the fact that he had not waited until thirty days after submission of his Request to Staff to submit the grievance. He was informed he could resubmit the grievance on September 23 or file a new grievance along with evidence to support his contention that August 23 was the date he submitted the Request to Staff. Williams chose to attempt to exhaust by filing a new grievance, which he did within the deadline established by prison personnel. The grievance coordinator, however, rejected his second attempt, asserting that he had failed to provide evidence to establish the filing date of the request to staff, rejecting his copy of the request to staff as insufficient. Williams filed an appeal with the ARA arguing that the memorandum rejecting the grievance provided him with no avenue for relief without violating either the ten-day resubmit or thirty day non-response deadlines. The ARA denied the appeal on the grounds that Williams had failed to follow previous instructions for filing the grievance and as a result he was out of time. *Williams v. Wilkinson*, Case No. 13-15, Doc. No. 1-1, p. 25 (E.D.Okla). A second letter from the Director's designee rejected an attempt to establish that the untimeliness was not his fault and denied his request for appeal out of time. *Id.* p. 26.

In reversing the decision of the district court that concluded the Plaintiff failed to exhaust his administrative remedies the Tenth Circuit focused on the improprieties at the facility level in rejecting the grievance. The court, however, did not find that the interpretational error by the grievance coordinator constituted interference with or thwarting of the grievance process so as to render administrative remedies unavailable. Rather, the court concluded that the grievance coordinator was wrong, and as a result, the Plaintiff had

exhausted the claim contained therein and could proceed. The court made a similar conclusion about a grievance denied in part because the affiliated request to staff had been allegedly received by the wrong staff member. Although the appeal to the ARA had been denied because the inmate failed to comply with the directions set forth in the response to his grievance, the court concluded that exhaustion had been completed, because the grievance responses had been erroneous. This Court concludes these examples support the conclusion that Defendants herein are entitled to summary judgment because Plaintiff did not avail himself of the ARA appellate process, and the fact that the grievance response may have be an improper policy interpretation did not render administrative remedies unavailable at the final step, the appellate level. Accordingly, because the Court may not consider the merits of Plaintiff's unexhausted claims, the Court finds Defendants are entitled to summary judgment.

The Court declines to adopt the Report and Recommendation to the extent it conflicts with the above. Plaintiff's Motion for Summary Judgment and Motion for Directed Verdict are hereby DENIED.

**IT IS SO ORDERED** this 19th day of September, 2016.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE